**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4320**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

BRANDON LLOYD DANIELS,

        Defendant - Appellant.

---

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Bruce H. Hendricks, District Judge.  (2:18-cr-00697-BHH-1)

---

Submitted:  January 14, 2025           Decided:  March 4, 2025

---

Before GREGORY and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:**  William W. Watkins, Sr., WILLIAM W. WATKINS, PA, Columbia, South Carolina, for Appellant.  Amy Elizabeth Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Brandon Lloyd Daniels appeals his convictions and the aggregate 600-month sentence imposed following both a bench trial, which related to two of the six counts charged in the underlying second superseding indictment, and a jury trial on the remaining four counts. The district court, sitting as the trier-of-fact, found Daniels guilty of possession of a sawed-off shotgun, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871 (Count 1), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e) (Count 2). The jury later convicted Daniels of three of the four remaining counts, including substantive Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 4); discharging a firearm during and in relation to a crime of violence, to wit: the Hobbs Act robbery charged in Count 4, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count 5); and possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e) (Count 6).

On appeal, counsel for Daniels filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), concluding that there were no meritorious issues for appeal but questioning the district court's calculation of Daniels' Sentencing Guidelines range as to two of the upward adjustments to his base offense level.[1] The Government declined to file a response brief. Daniels filed a pro se supplemental brief, raising several additional issues,

---

[1] Counsel for Daniels also proffered a conclusory, nonspecific claim of ineffective assistance of counsel. Our review of the record does not conclusively show that any of Daniels' attorneys rendered ineffective assistance. Accordingly, Daniels' ineffective assistance claim "should be raised, if at all, in a 28 U.S.C. § 2255 motion." *United States v. Kemp*, 88 F.4th 539, 546 (4th Cir. 2023) (internal quotation marks omitted).

2

including a facial challenge to his § 922(g) convictions based on *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Because of this argument, we initially held this appeal in abeyance for our decision in *United States v. Canada*, 103 F.4th 257 (4th Cir. 2024), which was issued in June 2024. In September 2024, we ordered counsel for Daniels to submit a supplemental *Anders* brief addressing other issues, which he did. Daniels submitted a second pro se supplemental brief identifying two new arguments for review. The Government once again declined to file a response brief.

In the interim, the Supreme Court granted certiorari and remanded *Canada* to this court for further consideration in light of *United States v. Rahimi*, 602 U.S. 680 (2024). *See Canada v. United States*, No. 24-5391, 2024 WL 4654952 (U.S. Nov. 4, 2024). On December 6, 2024, we re-issued and re-adopted the initial decision in *Canada*, as modified, *see United States v. Canada*, 123 F.4th 159 (2024) ("*Canada II*"), which rendered this case again ripe for disposition. Upon review of the entire record, considered in conjunction with the issues and arguments raised in the *Anders* briefs and the pro se supplemental briefs, we affirm.

I.

We first consider the Sentencing Guidelines issues raised in the initial *Anders* brief and Daniels' second pro se supplemental brief, which relate to the two-level adjustments for being a leader or organizer and obstruction of justice, and the district court's application of the attempted-murder cross-reference. "[T]his [c]ourt reviews all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard," *United States v. Torres-Reyes*, 952 F.3d 147, 151 (4th Cir.

3

2020) (cleaned up), for procedural and substantive reasonableness, *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020).  In evaluating procedural reasonableness, we consider whether the district court properly calculated the defendant's Guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence.  *Id*.  When rendering a sentence, the district court must make an individualized assessment based on the facts presented, state in open court the reasons supporting its chosen sentence, address the parties' nonfrivolous arguments in favor of a particular sentence and, if it rejects them, explain why in a manner allowing for meaningful appellate review.  *United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019).  We must review procedural reasonableness of the sentence before addressing substantive reasonableness.  *Id*. at 217-19.  If the sentence is procedurally reasonable, we then evaluate "the totality of the circumstances to determine whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)."  *United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2020) (internal quotation marks omitted).  "A sentence that is within or below a properly calculated Guidelines range is presumptively [substantively] reasonable."  *United States v. Bennett*, 986 F.3d 389, 401 (4th Cir. 2021) (internal quotation marks omitted).  "On appeal, such a presumption can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors."  *Id*. (cleaned up).

"In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, this [c]ourt reviews the district court's legal conclusions de novo and its factual findings for clear error."  *United States v.*

4

*Pena*, 952 F.3d 503, 512 (4th Cir. 2020) (internal quotation marks omitted). "[C]lear error exists only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Slager*, 912 F.3d 224, 233 (4th Cir. 2019) (internal quotation marks omitted).

Under the Guidelines, a district court should apply a two-level enhancement to an offense level if the defendant was an organizer, leader, manager, or supervisor in a criminal activity involving less than five participants. U.S. Sentencing Guidelines Manual § 3B1.1(c) (2021). In determining whether to apply a leadership role enhancement, a court should consider the defendant's "exercise of decision making authority, the nature of participation in the . . . offense, the recruitment of accomplices, [any] claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." USSG § 3B1.1 cmt. n.4.

Upon review of the record, we discern no error in the district court's application of the two-level leadership adjustment in this case. Specifically, at the jury trial, the Government presented testimony from Joshua Washington, which established that (a) at Daniels' direction, he drove Daniels to the Tavern & Table restaurant on the night of the robbery, dropped him off, and waited for communication from Daniels to pick him up after the robbery was completed; (b) received $200 from Daniels, who obtained approximately $5000 during the heist; and (c) was not involved in the planning or execution of the robbery.

5

Nor did the court err in applying the two-level obstruction-of-justice adjustment, which related to William Steeley's testimony at Daniels' bench trial in which Steeley claimed ownership of the sawed-off shotgun the police found under the mattress in Daniels' bedroom. Although the court did not explicitly hold that Steeley committed perjury, it strongly implied as much in finding that Steeley and Daniels concocted "a story in an attempt to undermine the evidence concerning Mr. Daniels' possession of the sawed-off shotgun." (J.A. 790-91).[2] Guidelines § 3C1.1 instructs a district court to increase a defendant's offense level by two levels "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction; and (2) the obstructive conduct related to . . . the defendant's offense of conviction." USSG § 3C1.1. Obstructive conduct within the meaning of § 3C1.1 includes "suborning, or attempting to suborn perjury . . . if such perjury pertains to conduct that forms the basis of the offense of conviction." USSG § 3C1.1 cmt. n. 4(B).

Perjury occurs when a witness under oath "(1) [gives] false testimony; (2) concerning a material matter; (3) with the willful intent to deceive." *United States v. Jones*, 308 F.3d 425, 428 n.2 (4th Cir. 2002). As previously stated, suborning perjury (or attempting to do so) is a basis for applying the obstruction of justice enhancement. USSG § 3C1.1 cmt. n.4(B). The district court found that Steeley's testimony claiming ownership of the sawed-off shotgun was false and offered at Daniels' behest, and our review of the

---

[2] Citations to the "J.A." refer to the Joint Appendix submitted by the parties.

record confirms that this ruling is not clearly erroneous. Accordingly, we find that the district court properly applied the obstruction adjustment. *See United States v. Andrews*, 808 F.3d 964, 970 (4th Cir. 2015) (affirming § 3C1.1 enhancement because "the district court's finding that [defendant] knowingly presented and likely actively orchestrated the presentation of false testimony was not only supported by abundant evidence, but also fell squarely within the conduct for which the defendant is expressly held responsible, namely 'conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused' (quoting USSG § 3C1.1, cmt. n.9)).

In his second pro se supplemental brief, Daniels challenges the district court's application of the Guidelines attempted-murder cross-reference,[3] which increased Daniels' adjusted offense level to 33. Daniels maintains that, to support application of this cross-reference, the sentencing court was required to make a factual finding, by a preponderance of the evidence, that the defendant possessed the specific intent to kill, citing Sixth Circuit authority for support.

The record, however, belies this assignment of error. At the conclusion of the thorough sentencing hearing, the district court made the following statement prior to announcing its sentencing decision:

> [A]s to the nature and circumstances of the offense in this case, it involved a tragic robbery, a shooting, the maiming of an innocent man tantamount to attempted murder in the firing of the weapon, in an attempt to shoot other people besides the victim we heard from today. . . . The shooting was vicious. Mr. Dixon was walking away. He was shot in the back. He was not threatened. He was compliant with the defendant's demands. But he was

---

[3] *See* USSG §§ 2A2.1(a), 2K2.1(c)(1)(A), 2X1.1(a).

> shot anyway, despite the fact that he was trying to provide the defendant with what he had asked for.  And he was shot and he was severely injured.

(J.A. 831-32).  This statement fulfills the court's burden to make factual findings to show that the Government satisfied its burden of proof so to support the attempted-murder cross-reference.  *See Slager*, 912 F.3d at 235 (explaining that, to establish the intent requirement for murder cross-reference, the Government must show malice, which "does not require proof of an intent to kill or injure," but instead "exists when the evidence demonstrates that the defendant acted with a heart that was without regard for the life and safety of others" (cleaned up)).

In addition to these specific Guidelines issues, we have fully considered the district court's sentencing analysis and, upon review, discern no potentially meritorious sentencing issues that warrant further consideration.  That is, the district court properly calculated both the total adjusted offense level applicable to the highest grouped counts, as well as Daniels' criminal history score, and opted to run the imposed sentences consecutively, as authorized by USSG § 5G1.2(d), to effectuate the total punishment of 360 months to life in prison.  Moreover, the court offered a robust explanation for the selected sentence that was tethered to the § 3553(a) factors.  Finally, the court considered but rejected the mitigation arguments proffered by defense counsel, finding them inadequate to undermine the severity and depravity of the offense conduct.  Accordingly, we affirm the aggregate 600-month sentence.

II.

We turn, then, to the remaining arguments raised in Daniels' pro se supplemental briefs, which (a) challenge the jury instructions related to Count 4 and the constitutionality of his § 922(g) convictions; and (b) seek to demonstrate reversible error based on *Erlinger v. United States*, 602 U.S. 821 (2024). First, because Daniels did not object to the jury instructions below, we review the instructions for plain error. *United States v. Cowden*, 882 F.3d 464, 475 (4th Cir. 2018). To establish plain error, Daniels must demonstrate the threshold requirements of (1) an error; (2) that is plain; and (3) that "affected [his] substantial rights," which generally requires a showing of "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 585 U.S. 129, 134-35 (2018) (internal quotation marks omitted).

A fatal variance—also known as a constructive amendment—occurs when the government (through argument or presentation of the evidence) or the district court (through jury instructions) "broadens the possible bases for conviction beyond those presented by the grand jury," effectively amending the indictment to allow the defendant to be convicted of a crime other than the one charged. *United States v. Burfoot*, 899 F.3d 326, 338 (4th Cir. 2018) (internal quotation marks omitted). Daniels maintains that there was a constructive amendment to the indictment, and a resulting fatal variance, because Count 4 charged Daniels both as a principal and under a theory of aiding and abetting but the jury was not instructed as to the latter. While Daniels is factually correct, this does not amount to a fatal variance.

9

It is axiomatic that a defendant "may be convicted of aiding and abetting under an indictment which charges only the principal offense." *United States v. Day*, 700 F.3d 713, 720 (4th Cir. 2012) (internal quotation marks omitted). The prohibition on constructive amendments focuses not on theories of liability "but on the offenses charged in an indictment." *Id*. Because aiding and abetting liability "does not set forth an essential element of the offense with which the defendant is charged or itself create a separate offense," but rather "describes the way in which a defendant's conduct resulted in the violation of a particular law," an aiding and abetting instruction does not result in a constructive amendment. *Id*. (internal quotation marks omitted); *see United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010) ("It is settled that vicarious liability predicated on having aided or abetted the crimes of another need not be charged in an indictment."). The converse is true in this case in that the district court's failure to instruct the jury on a theory of "aiding and abetting" liability does not amount to a fatal variance. *See United States v. Malloy*, 568 F.3d 166, 178 (4th Cir. 2009) (no constructive amendment where trial court omitted indictment's use of "knowingly" from jury instructions since knowledge was not an element of charged offense).

Daniels also complains that the instruction regarding Count 4 could have allowed the jury to convict him of conspiracy to commit Hobbs Act robbery, but this argument misunderstands the record. To be sure, Count 4 charged Daniels with jointly undertaking criminal activity "as principals, aiders and abettors, and co-participants" (J.A. 48), but it did not charge Daniels with conspiracy to commit Hobbs Act robbery. The court's

10

instruction was consistent with the indictment, and we observe that the jury acquitted Daniels of the separate charged count of conspiracy to commit Hobbs Act robbery.

Next, there is Daniels' overarching claim that, under *Bruen*, his § 922(g) convictions are unconstitutional. Upon remand from the Supreme Court for further consideration in light of *Rahimi*, we held in *Canada II* that "Section 922(g)(1) is facially constitutional." 123 F.4th at 161. And although the *Canada II* court did not render a ruling on an as-applied challenge to § 922(g)(1) because the appellant did not raise one, *id*., Daniels has not proffered arguments tending to suggest or show how the statute is unconstitutional as applied to him, and there is no reasonable basis for an as-applied challenge on this record. Lastly on this point, we observe that *Rahimi* reiterates—albeit in dicta—that "prohibitions . . . on the possession of firearms by 'felons and the mentally ill[]' are 'presumptively lawful.'" 602 U.S. at 682 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.26 (2008)). Accordingly, we reject Daniels' constitutional challenge to his § 922(g)(1) convictions.

That brings us to the last issue raised in Daniels' second pro se supplemental brief, to wit: that, under *Erlinger*, the jury should have made a factual finding as to whether he had a prior qualifying felony conviction to support the § 922(g) charges. In *Erlinger*, the Supreme Court—relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013)—held that the Constitution requires a unanimous jury to determine beyond a reasonable doubt that a defendant's predicate convictions were committed on separate occasions for purposes of the Armed Career Criminal Act (ACCA). 602 U.S. at 831-37, 843-44, 846-49. But whether Daniels had a qualifying prior felony

11

conviction was an element of the § 922(g) charges, and Daniels stipulated to his felon status at both the bench and jury trials. Thus, the court quite rightly did not charge the jury with deciding if the Government's evidence satisfied this element of the § 922(g) charges.

To the extent that Daniels suggests that the district court violated *Erlinger* by determining that his prior convictions qualified him for sentencing under the ACCA, we note that Daniels is simply mistaken. The record clearly shows that, although Daniels was charged with violating 18 U.S.C. § 924(e), he did not have the predicate convictions needed to trigger the increase in his statutory sentencing range. Finally, Daniels advances that, under *Erlinger*, the jury should have made the factual determinations necessary to support application of the attempted-murder cross-reference. But *Erlinger* does not undermine a sentencing court's authority to make factual determinations relevant to the Sentencing Guidelines because they do not increase a defendant's statutory range of punishment. *Cf. id.* at 834-35 (recognizing that, under *Alleyne* and *Apprendi*, "there is no doubt" that the Constitution requires that "[v]irtually any fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)," but that the Court "decide[d] no more than that . . . [defendant] was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt" (cleaned up)).

### III.

In accordance with *Anders*, we have reviewed the entire record in this case for any potentially meritorious issues and have found none. Accordingly, we affirm Daniels' convictions and sentence. This court requires that counsel inform Daniels, in writing, of

12

his right to petition the Supreme Court of the United States for further review.  If Daniels requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation.  Counsel's motion must state that a copy thereof was served on Daniels.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*